## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **CLINTON GRIMSLEY,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-cv-287** |
| | § | |
| **BRIAN RAINES, and** | § | |
| **CHRISTOPHER KJELSEN** | § | |
| *Defendants.* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Clinton Grimsley, complaining of Brian Raines and Christopher Kjelsen, and for causes of action will respectfully show unto the Court as follows:

> "Although officers may need to use 'physical force ... to effectuate [a] suspect's compliance' when he refuses to comply with commands during a traffic stop, the officers still must assess 'the relationship between the need and the amount of force used.' "

*Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

> "Nevertheless, we have long held that the use of 'deadly force' is unreasonable where the officer does not have 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others,' and we know of no case that has departed from this basic principle."

*Aguirre v. City of San Antonio*, 995 F.3d 395, 413 (5th Cir. 2021)*;* quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998); quoting *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701, 85 L. Ed. 2d 1 (1985).







## SUMMARY

On April 11, 2020, Officer Brian Raines of the Mansfield Police Department struck Clinton Grimsley in the face sixteen times with a flashlight fracturing Mr. Grimsley's orbital bone in his face, putting him in intensive care for days, and requiring facial reconstructive surgery. At the time Office Raines struck Mr. Grimsley repeatedly in the face with his flashlight, Mr. Grimsley was already being restrained by four other officers and the use of deadly force by repeatedly striking him in the face with a blunt metal object was unnecessary and unjustified, as no other officers used deadly force against Mr. Grimsley, and he was not presenting a threat of serious bodily harm. Word spread about the use of force and later that day Officer Bryan Goode sent a message to Officer Raines asking him "how is your flashlight" to which Officer Raines jokingly responding, "ha-ha dirty." Officer Raines was referring to his flashlight being covered with Mr. Grimsley's blood as he laughed about the excessive use of deadly force. Moreover, as captured on body worn camera at the scene, Defendant Raines proclaimed, "we roughed him [Plaintiff Grimsley] up pretty good it will be a significant use of force, I ended up getting a bunch of blood in my mouth it's like a bitter taste."

All of this occurred after Officer Christopher Kjelsen of the Kennedale Police Department ordered Mr. Grimsley to get onto the ground and Mr. Grimsley immediately complied; however, Officer Kjelsen then ran up and kicked Mr. Grimsley in the head while Mr. Grimsley was lying prone on the ground as ordered. Officer Kjelsen then struck Mr. Grimsley in the back of the head with his gun multiple times causing lacerations on the back of his head which required staples.

Mr. Grimsley now files this lawsuit against Officers Raines and Kjelsen for violating his constitutional rights under the Fourth Amendment to the United States Constitution to be free from excessive force and excessive deadly force.

## I.
## PARTIES

1.    Plaintiff Clinton Grimsley is a resident of Tarrant County, Texas.

2.    Defendant Brian Raines hereinafter ("Defendant Raines" or "Raines") is an individual residing in Tarrant County, Texas and is a police officer with the City of Mansfield Police Department and may be served at his place of employment at the Mansfield Police Department located at 1601 Heritage Parkway, Mansfield, TX 76063, or wherever he may be found. Defendant Raines is being sued in his individual capacity.

3.    Defendant Christopher Kjelsen hereinafter ("Defendant Kjelsen or "Kjelsen") is an individual residing in Tarrant County, Texas and is a police officer with the City of Kennedale Police Department and may be served at his place of employment at the Kennedale Police Department located at 401 Municipal Dr, Kennedale, TX 76060, or wherever he may be found. Defendant Kjelsen is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

4.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

5.    Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants reside in the Northern District of Texas and all of the causes of action accrued in the Northern District of Texas.

### III.
### FACTS AND ALLEGATIONS

6.     On April 11, 2020, Kennedale Police Officers Brian Andrews and Charles Burns were dispatched to Plaintiff Clinton Grimsley's residence.

7.     While enroute, Officers Andrews and Burns were advised that Mr. Grimsley was exhibiting behavior such as starting fires in his front yard and beating on his porch with an object.

8.     Officers Andrews and Burns arrived at Mr. Grimsley's residence.

9.     Officers Andrews and Burns encountered Mr. Grimsley as he walked out from the side of his residence.

10.     Mr. Grimsley was instructed to drop a toy sword that he was carrying and put his hands up.

11.     Mr. Grimsley complied by immediately dropping the toy and placing his hands in the air.

12.     Mr. Grimsley was instructed to sit down on the front porch of his residence.

13.     Mr. Grimsley complied with the instruction to sit down on his front porch.

14.     Officer Burns asked Mr. Grimsley if he needed to talk to a doctor and he replied, "that's why I was praying."

15.     Officers Andrews and Burns decided to take Mr. Grimsley to John Peter Smith Hospital for a mental health evaluation/detention.

16.     Officer Burns instructed Mr. Grimsley to stand up from his seated position on the front porch of his residence so that he could be detained.

17.     Mr. Grimsley complied with Officer Burns' request for him to get up.

18.    Officer Burns instructed Mr. Grimsley to lift his shirt and spin around so Burns could check for any weapons.

19.    Mr. Grimsley complied with Officer Burns' request by lifting his shirt up and spinning around.

20.    Officers removed a pocketknife from Mr. Grimsley's right front pocket.

21.    Officer Burns instructed Mr. Grimsley to put his hand behind his back.

22.    Mr. Grimsley placed one hand behind his back and allowed it to be handcuffed while expressing fear that he was going to get hurt by police.

23.    Mr. Grimsley began to flee on foot with one arm handcuffed.

### Defendant Kjelsen's Use of Excessive Force

24.    Kennedale Police Officer Defendant Christopher Kjelsen arrived on the scene.[1]

25.    Defendant Kjelsen pointed his duty weapon at Mr. Grimsley and instructed him to get down on the ground.

26.    Mr. Grimsley complied by getting down on the ground as instructed with his arms stretched out away from his body.

27.    Below is a screen capture from body worn footage showing Mr. Grimsley laying down prone on the ground.

---

[1] Defendant Kjelsen's body worn camera is attached as Exhibit A and fully incorporated herein.



28.    Below is a screenshot taken from Defendant Kjelsen's supplemental report which states "I observed Grimsley run into the driveway of a residence and then hop the fence of that residence and 718 Paula Ln. I parked and got out my patrol unit, and observed Grimsley standing in the front yard of 718 Paula Ln**. I pointed my duty weapon at Grimsley and advanced on him, ordering him to get on the ground. Grimsley complied and laid on his stomach.** As I ran up to him, I tripped and fell on Grimsley's back."

> I observed Grimsley run into the driveway of a residence and then hop the fence of that residence and 718 Paula Ln.  I parked and got out of my patrol unit, and observed Grimsley standing in the front yard of 718 Paula Ln.  I pointed my duty weapon at Grimsley and advanced on him, ordering him to get on the ground.  Grimsley complied and laid on his stomach.  As I ran up to him I tripped and fell on Grimsley`s back.

29.    Defendant Kjelsen did not trip and fall, but instead ran up and kicked Mr. Grimsley in the head.

30.    Below is a screen capture from body worn footage showing the shadow of Defendant Kjelsen on the house behind him as he kicked Mr. Grimsley in the head.



31.    Defendant Kjelsen's body camera video establishes that immediately prior to and at the time Defendant Kjelsen kicked Mr. Grimsley in the head, Mr. Grimsley was not threatening any officer or other person as Mr. Grimsley was prone on the ground as instructed, with his arms stretched out away from his body, while Defendant Kjelsen had him at gunpoint.

32.    Although Mr. Grimsley was involved in a foot pursuit prior to this incident, Mr. Grimsley had submitted to the officers' authority and was not evading or resisting arrest immediately prior to and at the time when Defendant Kjelsen kicked him in the head because as Defendant Kjelsen's body camera video establishes, Mr. Grimsley was prone on the ground as instructed, with his arms stretched out away from his body, while Defendant Kjelsen had him at gunpoint.

33.    Defendant Kjelsen then got on top of Mr. Grimsley and pistol-whipped Mr. Grimsley in the back of his head.

34.    Defendant Kjelsen's body camera video establishes that immediately prior to and at the time Defendant Kjelsen pistol-whipped him in the head, Mr. Grimsley was not threatening any officer or other person as Mr. Grimsley was prone on the ground as

instructed, with his arms stretched out away from his body, while Defendant Kjelsen had him at gunpoint after having just kicked him.

35.     Defendant Kjelsen's body camera video establishes that although Mr. Grimsley was involved in a foot pursuit prior to this incident, Mr. Grimsley had submitted to the officers' authority and was not evading or resisting arrest immediately prior to and at the time when Defendant Kjelsen pistol-whipped him in the head because as Defendant Kjelsen's body camera video establishes, Mr. Grimsley was prone on the ground as instructed, with his arms stretched out away from his body, while Defendant Kjelsen had him at gunpoint after having just kicked him.

36.     In a conversation with dispatch following the incident, Officer Joshua Walley stated, "certain requirements have to be met for deploying K9's and those requirements were not met."

37.     According to Officer Walley, "we had evading/resisting and threat to officers or others when I asked but we didn't have a severe crime...have to have all three for him [the K9 Unit] to be deployed."

| 4/11/2020 2:31:10AM | JOSHUA WALLEY | K91 JWALLEY JOSHUA WALLEY 04/11/20 02:31:10 DISP6 WE HAD EVADING/RESISTING AND THREAT TO OFFICERS OR OTHERS WHEN I ASKED BUT WE DIDNT HAVE A SEVERE CRIME....HAVE TO HAVE ALL 3 FOR HIM TO BE DEPLOYED | K91 |
|---|---|---|---|

38.     These statements evidence that at the time of the excessive use of force against Mr. Grimsley by Defendant Kjelsen Mr. Grimsley was not suspected of a severe crime as the K9 unit was not deployed.

39.     Mr. Grimsley suffered injuries including pain and lacerations to the back of his head which required staples to repair, when Defendant Kjelsen kicked him in the head and then struck him in the back of his head with his pistol.

40.    When Defendant Kjelson pistol whipped and kicked Mr. Grimsley in his head, Defendant Kjelson was acting under the color of law, as he was an on-duty officer with the Kennedale Police Department in full uniform, and using his department issued weapon.

## Defendant Raines's Use of Deadly Force

41.    A short time later, Mansfield Police Officer Defendant Brian Raines arrived on scene.

42.    When Defendant Raines arrived on scene, Mr. Grimsley was restrained on the ground by four other officers.

43.    Defendant Raines almost immediately upon arriving on scene began striking Mr. Grimsley in the face with his flashlight.

44.    Defenant Raines struck Mr. Grimsley sixteen times with his department issued metal flashlight in the face and head.

45.    Defendant Raines's dash cam and body worn camera recorded him striking Mr. Grimsley sixteen times with his metal flashlight.[2]

46.    Defendant Raines struck Mr. Grimsley so violently with his flashlight that Mr. Grimsley's blood sprayed everywhere and entered Defendant Raines' mouth.

47.    Below is a screen capture showing Defendant Raines striking Mr. Grimsley's face and head with his metal flashlight.

---

[2] Defendant Raines' body camera footage is attached as Exhibit B and incorporated fully herein.



48.    Below are screen captures of Defendant Raines' body worn camera which shows Mr. Grimsley was laying face down at the time of the deadly use of force.





49.     After the incident, Defendant Raines made several statements referring to his use of deadly force on Mr. Grimsley.

50.     After Mr. Grimsley was placed in the back of the patrol vehicle Defendant Raines stated, "Nah I was hitting him pretty good, and got a shit ton of blood in my mouth."

51.     As captured on body worn camera, Defendant Raines admitted, "I struck him in the face with my flashlight."

52.     As captured on body worn camera, Defendant Raines admitted, "I punched him and struck him with the flashlight to the face. That's where the injuries are going to be from."

53.     As captured on body worn camera, Defendant Raines admitted, "We roughed him up pretty good it will be a **significant use of force**," I ended up getting a bunch of blood in my mouth it's like a bitter taste."

54.     As captured on the screenshot below, in the day following the incident, Officer Bryan Goode sent a message to Defendant Raines asking him, "how is your flashlight holding up" and Defendant Raines jokingly responded, "ha-ha dirty!"



55.     Officer Raines was referring to his flashlight being covered with Mr. Grimsley's blood as he laughed about the excessive use of deadly force.

56.     When Defendant Raines used deadly force by striking Mr. Grimsley with his metal flashlight, Defendant Raines was acting under color of law, as he was on duty officer

with the Mansfield Police Department, in full uniform, detaining Mr. Grimsley, and using his department issued flashlight.

## **Deadly Force was Not Warranted or Justified**

57.    Defendant Raines used deadly force against Mr. Grimsley when he struck him sixteen times with his department issued metal flashlight as this created a substantial risk of death or serious bodily injury and did in fact cause serious bodily injury by fracturing Mr. Grimsley's left orbital bone in his face, putting him in intensive care for days, and requiring facial reconstructive surgery.

58.    At the time Defendant Raines intentionally struck Mr. Grimsley in the face and head with his metal flashlight sixteen times, Mr. Grimsley had not threatened Defendant Raines or any other person with serious bodily harm as Mr. Grimsley was being restrained by multiple officers on the ground at the time Defendant Raines used excessive deadly force.

59.    At the time Defendant Raines intentionally struck Mr. Grimsley in the face and head with his metal flashlight sixteen times, Mr. Grimsley was not suspected of committing a violent or assaultive crime as he was being detained for a mental health hold and simply fled on foot, which is a nonviolent misdemeanor offense.

60.    When Defendant Raines intentionally struck Mr. Grimsley sixteen times in the face and head with his department issued flashlight, Mr. Grimsley was not reaching for his waistband, into his pockets, into his jacket, or any other place a weapon could have been held as Mr. Grimsley never reached toward any area that he could have kept a weapon.

61.    Intentionally striking Mr. Grimsley sixteen times with a department issued metal flashlight would constitute the use of deadly force.

62.    While the use of some force was justified to detain Mr. Grimsley, the use of deadly force was not justified at the time that Defendant Raines struck Mr. Grimsley sixteen times with his department issued metal flashlight as none of the other officers used deadly force and instead tased or struck Mr. Grimsley with fists.

63.    Defendant Raines was not aware of any facts which justified the use of deadly force against Mr. Grimsley when he struck Mr. Grimsley sixteen times with his department issued metal flashlight.

### Mr. Grimsley's Severe Injuries

64.    After the excessive use of force and deadly use of force, Mr. Grimsley was carried inside of a patrol vehicle.

65.    A spit mask was placed over Mr. Grimsley's head as he began to bleed profusely.

66.    According to Officer Burns' report he noticed "a laceration above Grimsley's left eye with swelling and discoloration and a laceration on his forehead. He had several small lacerations on the left side of his head."

67.    Defendant Raines caused a fracture in Mr. Grimsley's left orbital floor, when Defendant Raines intentionally struck him sixteen times with his department issued metal flashlight.

68.    Mr. Grimsley had to undergo surgery and has permanent scarring as a result of Officer Raines's unnecessary use of deadly force.

69.    These injuries were directly and proximately caused by Defendant Raines intentionally striking Mr. Grimsley with his department issued metal flashlight and were not caused by any other means.

70.    Mr. Grimsley's injuries were so severe that a paramedic at the scene expressed concern to officers that, "I don't know if he's opened something up but now, he's bleeding real bad. He's bleeding in the head real bad right now. He's soaking up that mask real bad. Will the jail take him like that?"

71.    Mr. Grimsley's injuries were so severe that after the incident Officer Andrews remarked, "I think we're really going to have to tie him to a gurney and take him to the hospital cause they've got a spit face thing on him and that thing is soaked in blood. They're not going to take him to the jail like that."

72.    Mr. Grimsley's injuries were so severe that after the incident an officer remarked, "you can't see any pigmentation in his face it's all straight blood."

73.    Below are screen captures showing how Mr. Grimsley was profusely bleeding after the injuries he sustained from the excessive uses of force and deadly force.







**IV.**

## CAUSES OF ACTION

### Count One

### Excessive Use of Deadly Force
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Raines

74.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 6 through 73 as if fully repeated herein.

75.    Acting under the color of law, Defendant Raines deprived Mr. Grimsley of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of excessive deadly force.

76.    Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

77.    The amount of force used by Defendant Raines against Mr. Grimsley as described above, specifically but not limited to, when Defendant Raines used deadly force by striking Mr. Grimsley in the face and head sixteen times with a metal flashlight as Mr. Grimsley was already being restrained by other officers and was not presenting an immediate risk of serious bodily harm or threatening any officer or other person with serious bodily harm, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, suffering, and permanent physical disfigurement upon Mr. Grimsley.

78.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

79.    Defendant Raines fractured Mr. Grimsley's orbital bone in his face, put him in intensive care for days, and caused injuries which required facial reconstructive surgery

when Defendant Raines struck him in the face and head sixteen times with a metal flashlight.

80.    Mr. Grimsley has permanent scarring as a result of Officer Raines's unnecessary use of deadly force.

81.    These injuries were directly and proximately caused by Defendant Raines striking Mr. Grimsley in the face and head sixteen times with a metal flashlight and were not caused by any other means.

82.    Although officers may need to use "physical force ... to effectuate [a] suspect's compliance" when he refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

83.    The Fifth Circuit defines deadly force as force that "creates a substantial risk of death or serious bodily injury." *Aguirre v. City of San Antonio*, 995 F.3d 395, 413 (5th Cir. 2021); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014).

84.    Defendant Raines used deadly force against Mr. Grimsley when he struck Mr. Grimsley in the face and head sixteen times with a metal flashlight as this created a substantial risk of death or serious bodily injury and did in fact cause serious bodily injury by fracturing Mr. Grimsley's orbital bone in his face, putting him in intensive care for days, and causing injuries which required facial reconstructive surgery.

85.    As the Fifth Circuit has stated, "claims that law enforcement unreasonably employed *deadly* force—the ultimate intrusion—are treated as 'a subset of excessive force' claims. *Aguirre*, 995 F.3d at 407; quoting *Bazan ex rel. Bazan v. Hidalgo Cty., 246 F.3d*

*481, 487-88 (5th Cir. 2001);* citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998).

86.    The Fifth Circuit went on to explain that, "[w]e therefore analyze whether, taking the evidence in the light most favorable to Plaintiffs, the **level** of force the Officers used was unreasonably excessive to the needs of the situation, *see Graham v. Connor,* 490 U.S. 386, 389, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), including whether the Officers unreasonably and unnecessarily employed deadly force against [the defendant]. *Aguirre*, 995 F.3d at 407; *see Gutierrez*, 139 F.3d at 446.

87.    The Supreme Court held in *Scott* that there is no "magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force,'" and such claims are broadly analyzed under the same general rubric of "reasonableness" as other excessive force claims. *Aguirre*, 995 F.3d at 412-13; quoting *Scott,* 550 U.S. at 382-83, 127 S.Ct. 1769.

88.    At bottom, the Court held, a Fourth Amendment challenge to deadly force still calls for a "balanc[ing of the] nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.*

89.    The Fifth Circuit continued, "[n]evertheless, we have long held that the use of 'deadly force' is unreasonable where the officer does not have 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others,' *Gutierrez*, 139 F.3d at 446 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701, 85 L. Ed. 2d 1 (1985)), and we know of no case that has departed from this basic principle." *Aguirre*, 995 F.3d at 412–13.

90.    Because Mr. Grimsley was not posing a threat of serious physical harm to Defendant Raines or any other person as he was restrained on the ground by multiple officers, it was clearly established that Defendant Raines's actions were a violation of the Fourth Amendment. *Gutierrez*, 139 F.3d at 446 (quoting *Garner*, 471 U.S. at 11, 105 S.Ct. 1694).

91.    The test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989).

92.    When Defendant Raines struck Mr. Grimsley sixteen times in the face and head with a metal flashlight, Mr. Grimsley was not holding a weapon.

93.    When Defendant Raines struck Mr. Grimsley sixteen times in the face and head with a metal flashlight, Mr. Grimsley was not reaching for his waistband, into his pockets, into his jacket, or any other place a weapon could have been held as Mr. Grimsley was being restrained on the ground by multiple officers.

94.    When Defendant Raines struck Mr. Grimsley sixteen times in the face and head with a metal flashlight, Mr. Grimsley had not threatened Defendant Raines or any other person with serious bodily harm as Mr. Grimsley was being restrained by other officers on the ground at the time Defendant Raines used excessive deadly force.

95.    When Defendant Raines struck Mr. Grimsley sixteen times in the face and head with a metal flashlight, Mr. Grimsley was not suspected of committing a violent or

assaultive crime as he was being detained for a mental health hold and simply fled on foot, which is nonviolent misdemeanor offense.

96.     While the use of some force was justified to detain Mr. Grimsley, the use of deadly force was not justified at the time that Defendant Raines struck Mr. Grimsley sixteen times in the face and head with a metal flashlight, as none of the other officers used deadly force and instead tased or struck Mr. Grimsley with fists.

97.     Defendant Raines was not aware of any facts which justified the use of deadly force against Mr. Grimsley when he struck Mr. Grimsley sixteen times in the face and head with a metal flashlight.

98.     When he struck Mr. Grimsley with his flashlight, Defendant Raines was acting under color of law, as he was on duty as an officer with the Mansfield Police Department, in full uniform, and detaining Mr. Grimsley.

### Count Two

### Excessive Use of Force
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Kjelsen

99.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 6 through 73 as if fully repeated herein.

100.    Acting under the color of law, Officer Kjelsen deprived Mr. Grimsley of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of excessive force.

101.    Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

102.    The amount of force used by Defendant Kjelsen against Mr. Grimsley as described above, specifically but not limited to, when Defendant Kjelsen kicked Mr.

Grimsley in the head and then struck him in the back of his head with Defendant Kjelsen's pistol after Mr. Grimsley complied with the order to get on to the ground, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Mr. Grimsley.

103.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

*104.*    A constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir. 2018).

105.    Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Id.*

106.    [A]lthough the right to make an arrest "'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,'" the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (internal citations omitted).

107.    Although officers may need to use "physical force ... to effectuate [a] suspect's compliance" when he refuses to comply with commands, the officers still must assess "the relationship between the need and the amount of force used." *Newman*, 703 F.3d at 763; quoting *Deville*, 567 F.3d at 167.

108.    Additionally, Fifth Circuit case law is clear that an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased. *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 413 (5th Cir. 2009).

109.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

110.    Mr. Grimsley suffered injuries, including pain and lacerations to the back of his head which required staples to repair, when Defendant Kjelsen kicked him in the head and then struck him in the back of the head with his pistol.

111.    Defendant Kjelsen kicking Mr. Grimsley in the head and then striking him in the back of the head with Defendant Kjelsen's pistol was the cause of these injuries.

112.    Mr. Grimsley was not threatening any officer or other person immediately prior to and at the time when Defendant Kjelsen kicked him in the head and then struck him in the back of the head with his pistol, because as Defendant Kjelsen's body camera video establishes, Mr. Grimsley was prone on the ground as instructed, with his arms stretched out away from his body, while Defendant Kjelsen had him at gunpoint.

113.    Although Mr. Grimsley was involved in a foot pursuit prior to this incident, Mr. Grimsley had submitted to the officers' authority and was not evading or resisting arrest immediately prior to and at the time when Defendant Kjelsen kicked him in the head and then struck him in the back of the head with his pistol, because as Defendant Kjelsen's body camera video establishes, Mr. Grimsley was prone on the ground as instructed, with his arms stretched out away from his body, while Defendant Kjelsen had him at gunpoint.

114.    A reasonable officer would know that the use of force of this nature is <u>clearly excessive</u> when engaging with citizens such as Mr. Grimsley, who was not threatening any officer or other person, was not attempting to evade or resist arrest at the time the force was used, and who the use of force was not warranted, because as Defendant Kjelsen's

body camera video establishes, Mr. Grimsley was prone on the ground as instructed, with his arms stretched out away from his body, while Defendant Kjelsen had him at gunpoint.

115.    A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Mr. Grimsley, who was not threatening any officer or other person, was not attempting to evade or resist arrest at the time the force was used, and who the use of force was not warranted, as Defendant Kjelsen's body camera video establishes, Mr. Grimsley was prone on the ground as instructed, with his arms stretched out away from his body, while Defendant Kjelsen had him at gunpoint.

116.    A reasonable officer in Defendant Kjelsen's position would know that kicking Mr. Grimsley in the head and then striking him in the back of his head with Defendant Kjelsen's pistol after Mr. Grimsley complied with the order to get on to the ground was clearly unreasonable and excessive.

117.    As a direct result of the force used against him by Defendant Kjelsen, Mr. Grimsley has suffered physical injury, pain, and permanent disfigurement for which he sues herein.

118.    These injuries were not caused by any other means.

## V.
## PUNITIVE DAMAGES

119.    Mr. Grimsley repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

120.    When viewed objectively from the standpoint of Defendant Raines and Defendant Kjelsen, at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

121.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Raines and Defendant Kjelsen which was recklessly or callously indifferent to Mr. Grimsley' constitutionally protected rights, Mr. Grimsley is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

122.    Mr. Grimsley repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

123.    Mr. Grimsley' injuries were a foreseeable event.

124.    Mr. Grimsley' injuries were directly and proximately caused by the use of excessive force and the use of excessive deadly force against Mr. Grimsley.

125.    As a result, Mr. Grimsley is entitled to recover all actual damages allowed by law. Mr. Grimsley contends the Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Mr. Grimsley' federally protected rights. Thus, Mr. Grimsley is entitled to punitive damages against Defendant Raines and Defendant Kjelsen.

126.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Mr. Grimsley was forced to suffer:

    a.  Physical injuries;
    b.  Physical pain and suffering; and
    c.  Permanent physical disfigurement;

127.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

**VII.**
**ATTORNEY'S FEES**

128.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

**VIII.**
**JURY REQUEST**

129.    Plaintiff respectfully requests a jury trial.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
State Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS
State Bar No. 24105721

*/s/ Breanta Boss*
BREANTA BOSS
Missouri State Bar No. 74207

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
breanta@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF